(Not for publication)                                                                                              (Docket Entry No. 15)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

_____
:
JOSEPH A. GIUDICE,                            :
                                              :
                Plaintiff,          :          Civil No. 07-1143 (RBK)
                                              :
                v.                  :          **OPINION**
                                              :
THE COUNTY OF ATLANTIC, et al.,               :
                                              :
                Defendants.         :
_____:

**KUGLER**, United States District Judge:

       Plaintiff Joseph A. Giudice filed this action under 42 U.S.C. § 1983 and state law, bringing claims against the County of Atlantic and several Atlantic County Corrections Officers. Plaintiff alleges he was assaulted by Corrections Officers at the Atlantic County Justice Facility and then denied proper medical care. Presently before the court is Defendants' motion for summary judgment. For the reasons stated below, Defendants' motion will be denied as to Count One of Plaintiff's complaint and granted as to Counts Two, Three, and Four of Plaintiff's complaint. Further, Defendants' motion for summary judgment on the issue of non-economic damages will be denied as to Count Five and granted as to Count Six. Finally, Defendants' motion for summary judgment will be granted as to Count Seven to the extent that it is a § 1983 claim and granted on the issue of non-economic damages to the extent that it is a state law claim.

**I. BACKGROUND**

After being convicted of driving while intoxicated and operating a vehicle without a valid license, Plaintiff was sentenced to twenty days in jail, to be served on weekends. On March 11,[1] 2006, Plaintiff reported to the Atlantic County Justice Facility to serve part of his sentence. Plaintiff had been drinking before he arrived. He had not slept at all the night before. Plaintiff and Defendants offer different accounts of what happened next.

### A. The March 11th Altercation

Plaintiff acknowledges that his recollection of the events of March 11, 2006 may have been affected by his lack of sleep and drinking. (Giudice Dep. at 69.) According to Plaintiff, he entered the lobby of the Justice Facility and went to the window to check in. (Id. at 81.) Plaintiff may have banged on the window to get someone's attention. (Id.) Lieutenant Myron Hendrick came to the lobby to let Plaintiff in. (Id. at 85.) Hendrick believed Plaintiff had been drinking and asked Plaintiff to take a breathalyzer test, and Plaintiff asked why he had to take the test. (Id. at 86, 88.) According to Plaintiff, Hendrick screamed at him about his drinking and told him to sit down. (Id. at 91-92.) Plaintiff tried to explain himself and raised his hands with his palms out to indicate that he did not want any problems. (Id. at 92, 95-96.) At some point, two or three other officers had entered the room. (Id. at 98-99, 101.)[2] Plaintiff claims that one of the officers, who Plaintiff thinks was Hendrick, punched him. (Id. at 100.) Plaintiff dropped to

---

[1] It is not clear from the materials presented by the parties whether the incident in question took place on March 10th or 11th. For purposes of deciding Defendants' motion, the Court will presume that the incident took place on March 11th.

[2] Plaintiff did not know who these officers were until a charge was filed against him. (Giudice Dep. at 107-08.) He assumed that the officers who filed the charge had beaten him. (Id. at 110.)

the floor and was hit repeatedly. (Id. at 103.) Eventually, the officers handcuffed Plaintiff. (Id. at 110.) Plaintiff claims he was left handcuffed, without medical attention, for at least an hour. (Id. at 111-12.)

Defendants present a different account of the events of March 11, 2006. According to Defendants, while Hendrick was escorting Plaintiff into the facility, he asked if Plaintiff had been drinking, and Plaintiff replied "what's it to you?" (Defs.' Exs. C and D, reports of Hendrick and Juzwiak.) Plaintiff said he had been drinking Budweiser and Jack Daniels, but was not forthright about how much. (Defs.' Exs. C, D, and E, reports of Hendrick, Juzwiak and Valencia.) Hendrick ordered Plaintiff to sit down several times, and Plaintiff refused to comply. (Id.) Plaintiff raised his hands in a threatening manner. (Id.) At that point, Officers Carlos Valencia and Michael Juzwiak attempted to subdue Plaintiff. (Id.) Plaintiff was swinging at the officers until he was handcuffed. (Defs.' Exs. C and D.) Officer Giacomo Parisi was in the control center and witnessed, but did not participate in, the altercation. (Defs.' Ex. F, report of Parisi.)

Disciplinary charges of refusing to take a breathalyser test and attempted assault were brought against Plaintiff based on the March 11th incident. After a hearing, Plaintiff was found guilty of the disciplinary charges and was required to forfeit one hundred eighty commutation (good time) credits. (Defs.' Ex. K, Discipline Hearing Report.)

### B. Plaintiff's Injuries

Plaintiff claims that as a result of the attack on him, he suffered injuries to his head, ears, eyes, shoulders and upper body, as well as hearing loss and mental anguish. (Pl.'s Br. at 8.) On the day of the incident, Plaintiff was treated by the medical department at the jail for a contusion on the left side of his face and a laceration on the bridge of his nose. (Defs.' Ex. G, CFG Health

Systems Report.)  Two days later, he complained of a headache and was given Tylenol.  (Id.)

Shortly after being released from jail, Plaintiff saw an eye doctor who told Plaintiff that there was no permanent damage to his eye.  (Giudice Dep. at 113-14, 122).  Approximately two months later, Plaintiff saw Dr. Yunh-Mee Park, complaining of an ear injury and hearing loss.  (Defs.' Ex. I, Report of Dr. Park.)  Plaintiff told Dr. Park that a friend hit him in the ear several days earlier while they were slap boxing.  (Id.)  Plaintiff now claims that he lied to Dr. Park about the cause and timing of his injury and that the ear injury was sustained in the March 11th incident.  (Giudice Dep. at 116-17.)  Plaintiff also saw a psychotherapist several times, beginning in May of 2006.  (Defs.' Ex. J, Report of Dr. Winokur.)  In these sessions, Plaintiff discussed "anxiety dreams, remembering the various altercations with prison officers."  (Id.)

**C.  Procedural History**

On March 10, 2007, Plaintiff filed a complaint against the County of Atlantic ("the county") and Atlantic County Corrections Officers Myron Hendrick, Michael Juzwiak, Giacomo Parisi, Carlos Valencia, and John Doe(s) ("the corrections officers").[3]  In Counts One and Two, Plaintiff claimed that the corrections officers violated 42 U.S.C. § 1983 by using excessive force and by failing to provide him with adequate medical treatment.  In Count Three, Plaintiff claimed that the county failed to protect him from the corrections officers' use of excessive force.  In Count Four, Plaintiff claimed that the county was vicariously liable for the corrections officers' failure to provide medical care.  In Counts Five and Six, Plaintiff alleged that the corrections officers committed assault and battery, and that the county was vicariously liable for this tort.  In

---

[3] Sergeant Vernada Hall was also named in the complaint, but he was dismissed from this litigation on January 15, 2008.

4

Count Seven, Plaintiff claimed that the county failed to adequately train its corrections officers.

On May 8, 2008, Defendants filed the motion for summary judgment currently before the Court. Plaintiff opposes this motion.

## II. STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party

5

will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### III.  DISCUSSION

#### A. Excessive Force Claim (Count One)

Defendants argue that they are entitled to summary judgment on Plaintiff's excessive force claim because the force used against Plaintiff was de minimis and therefore did not violate the Eighth Amendment.  Defendants also argue that they are entitled to qualified immunity.

##### 1.  De Minimis Force

A prisoner alleging a violation of the Eighth Amendment must satisfy a subjective and an objective component.  Hudson v. McMillian, 503 U.S. 1, 8 (1992).  Where prison guards are accused of using excessive force, the appropriate inquiry with regard to the subjective component is "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Id. at 7.  The objective component, which addresses whether the conduct at issue violates "contemporary standards of decency," is always satisfied where "prison officials act maliciously and sadistically use force to cause harm."  Id. at 9.  However, not "every malevolent touch gives rise to a federal cause of action."  Id.   If the use of force is de minimis, there is no Eighth Amendment violation, unless the use of force is "repugnant to the conscience of mankind."  Id. at 9-10 (citation omitted).

In determining whether the use of force violates the Eighth Amendment, courts consider the severity of the prisoner's injuries, as well as the following factors: "the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and any 'efforts made to temper the severity of a forceful response.'"  Id. at 7 (citation omitted).  Thus, the severity of a prisoner's injuries is but one factor

6

a court considers in determining whether the use of force was de minimis.  Id.

Here, Defendants argue that they are entitled to summary judgment "because the record is clear that the defendants acted in a good faith attempt to protect their safety and the security of the institution." (Defs.' Br. at 21).  In determining whether the evidence supports Defendants' argument, the Court may not consider any evidence presented by Plaintiff that would be inconsistent with the disciplinary decision against him finding him guilty of attempt to assault.  See Heck v. Humphrey, 512 U.S. 477, 486-87 (1994) (holding that plaintiff may not bring § 1983 claim based on "actions whose unlawfulness would render a conviction or sentence invalid" unless the conviction had been invalidated); see also Edwards v. Balisok, 520 U.S. 641, 643-48 (1997) (applying Heck where § 1983 plaintiff had been found guilty in prison disciplinary proceeding).  In some cases, a § 1983 plaintiff's claim will not be completely barred because of his conviction, but the plaintiff will not be permitted to present evidence inconsistent with his conviction.  See, e.g., Lora-Pena v. F.B.I., 529 F.3d 503, 506 (3d Cir. 2008) (finding that plaintiff's conviction for resisting arrest did not bar his excessive force claim because officer could have acted with excessive force in response to plaintiff's illegal conduct); Gilbert v. Cook, 512 F.3d 899, 901-02 (7th Cir. 2008) (finding that § 1983 plaintiff was bound by disciplinary hearing finding that he struck a guard, but could still raise claims based on allegations that guards used unreasonable force after this blow).  Here, the Court cannot consider Plaintiff's claim that the attack on him was completely unprovoked because this claim is inconsistent with the disciplinary finding that Plaintiff was guilty of attempt to assault.

The facts consistent with the disciplinary hearing decision, as viewed in the light most favorable to the Plaintiff, are that after Plaintiff attempted to assault Hendrick, he was knocked to

the ground and repeatedly hit.  While there was a need for some force to respond to Plaintiff's attempt to assault a corrections officer, there is a genuine issue of material fact regarding the relationship between the amount of force used and the need for force.  Therefore, the Court will deny Defendants' motion for summary judgment as to the excessive force claim.

### 2. Qualified Immunity

Defendants claim that they are entitled to qualified immunity and therefore cannot be sued for their actions.  Qualified immunity protects government officials from liability for civil damages where their performance of discretionary functions "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  To determine whether government officials are entitled to qualified immunity, a court must first determine whether, taken in the light most favorable to the plaintiff, the facts alleged show that the official violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  If this question is answered in the affirmative, the court must then consider whether the right was clearly established.  Id.  A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Id. at 202 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).

Here, the Court has determined that there is a genuine issue of material fact as to whether Defendants acted maliciously and sadistically to cause harm in violation of the Eighth Amendment.  Furthermore, it is well-established that the Eighth Amendment prohibits the "unnecessary and wanton infliction of pain."  See, e.g., Whitley v. Albers, 475 U.S. 312, 320-21 (1986).  Therefore, the Court will not grant Defendants' motion for summary judgment as to

Count One based on qualified immunity.

### B. Failure to Provide Adequate Medical Care (Counts Two and Four)

Defendants argue that they are entitled to summary judgment with respect to Plaintiff's claims of failure to provide medical care because Plaintiff has failed to produce any evidence that he received inadequate medical treatment. In order to establish that prison officials violated the Eighth Amendment by failing to provide adequate medical care, a plaintiff must show that he had a serious medical need and that the officials acted with "deliberate indifference" to that need. Estelle v. Gamble, 429 U.S. 97, 104 (1976).

A prison official shows "deliberate indifference" if he "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). A prisoner may establish deliberate indifference by showing that prison guards were aware of his medical needs and delayed necessary treatment for a non-medical reason. Monmouth County Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987). Further, the Monmouth court explained how the serious medical need prong may be met:

> A medical need is "serious," in satisfaction of the second prong of the Estelle test, if it is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." The seriousness of an inmate's medical need may also be determined by reference to the effect of denying the particular treatment. . . . In addition, where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious.

Id. at 347 (internal citations omitted).

Plaintiff has not provided evidence that he had a serious medical need that the corrections officers were aware of at the time his medical treatment was allegedly delayed. As a result of the altercation with the corrections officers, Plaintiff suffered bruising and lacerations. Plaintiff does

9

not claim that the delay in treating these injuries exacerbated them. Plaintiff now claims that he suffered an ear injury that caused hearing loss, which would be a serious medical need, but Plaintiff did not raise this concern until two months after the prison altercation. Plaintiff has presented no evidence that the corrections officers were aware of any ear injury at the time medical treatment was allegedly delayed. Furthermore, Plaintiff received treatment for his minor injuries on the day of the altercation and two days later, when he complained of a headache. The Court finds that Plaintiff has not presented evidence that the corrections officers were deliberately indifferent to a serious medical need, and therefore grants Defendants' motion for summary judgment with regard to Counts Two and Four of Plaintiff's complaint.[4]

### C. Failure to Protect (Count Three)

Defendants argue that the county is entitled to summary judgment with respect to Plaintiff's claim of failure to protect Plaintiff from the attack by its corrections officers because the county was not aware of any substantial risk created by its prison staff, and therefore could not have been deliberately indifferent to that risk. In order to establish municipal liability under § 1983, a plaintiff must identify a municipal custom or policy that caused his injury. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694 (1978). A plaintiff may do so by showing either (1) "that a particular municipal action *itself* violates federal law, or directs an employee to do so," or (2) that a municipal action caused its employees to violate the plaintiff's federal rights and that this action "was taken with 'deliberate indifference' to its known or

---

[4] Furthermore, the Court notes that Count IV of Plaintiff's complaint alleges that the county is vicariously liable under § 1983 for the actions of its employees. Under § 1983, a municipality cannot be held liable under a theory of vicarious liability. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 691 (1978).

obvious consequences." Bd. of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 404, 407 (1997) (citation omitted). Plaintiff has chosen the second approach. Under this approach, a plaintiff may establish deliberate indifference by showing a pattern of constitutional violations by municipal employees that should have put the municipality on notice of the need for further action. Id. at 407-08.

Plaintiff states that the county either knew or should have known of the violent propensities of its guards. (Complaint at ¶ 6.) However, Plaintiff has not produced evidence of a custom or policy of the county that caused his injuries. Plaintiff has produced evidence that Defendant Valencia was arrested for criminal possession of a weapon in connection with a "road rage" incident in December 2005.[5] (Valencia Dep. at 32-34). Plaintiff has not, however, produced evidence of a pattern of constitutional violations by corrections officers that would put the county on notice of their violent propensities. Therefore, Defendants' motion for summary judgment is granted with respect to Count Three of Plaintiff's complaint.

**D. Assault and Battery (Counts Five and Six)**

Defendants claim they are entitled to summary judgment on the issue of non-economic damages with respect to Counts Five and Six of Plaintiff's complaint. Defendants argue that the verbal threshold component of the New Jersey Tort Claims Act precludes Plaintiff from recovering damages for pain and suffering. The verbal threshold provision of the Tort Claims Act provides:

---

[5] Plaintiff also produced evidence that Valenica was arrested for assault and domestic violence in November 2006 (Valencia Dep. at 35.) Since the incident involving Plaintiff occurred before the domestic violence arrest, it was impossible for the County to have been aware of it at the time Plaintiff claims he was assaulted.

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00.

N.J. STAT. ANN. § 59:9-2d (2006).

### 1. Assault and Battery Claim Against Officers (Count Five)

Under the Tort Claims Act, public employees are generally liable for their torts. N.J. STAT. ANN. § 59:3-1. The verbal threshold provision limits this liability. However, the verbal threshold provision does not apply where a public employee's conduct was "outside the scope of his employment or constituted a crime, actual fraud, actual malice or willful misconduct." N.J. STAT. ANN. § 59:3-14; Taglieri v. Moss, 842 A.2d 280, 287-88 (N.J. Super. Ct. App. Div. 2004) (explaining relationship between § 59:9-2d and § 59:3-14). "Willful misconduct is 'the commission of a forbidden act with actual (not imputed) knowledge that the act is forbidden. . . . [I]t requires much more than an absence of good faith and much more than negligence.'" Mantz v. Chain, 239 F. Supp. 2d 486, 508 (D.N.J. 2002) (citations omitted). For the reasons discussed above in the context of Plaintiff's excessive force claim, the Court finds that there is a genuine issue of material fact as to whether the corrections officers engaged in willful misconduct by using excessive force on Plaintiff. Therefore, Defendants' motion for summary judgment is denied with regard to Plaintiff's recovery of non-economic damages for Count Five of Plaintiff's complaint.

### 2. Assault and Battery Claim Against the County (Count Six)

Under the Tort Claims Act, "[a] public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and

to the same extent as a private individual under like circumstances." N.J. STAT. ANN. § 59:2-2a. This liability, like that of public employees, is limited by the verbal threshold provision. Plaintiff does not explain why the verbal threshold provision should not apply to the county with regard to the assault and battery claim. Instead, Plaintiff focuses on the county's liability for failure to train its employees (Count Seven of Plaintiff's complaint).

With regard to the assault and battery claim, the Court finds that Plaintiff has not presented sufficient evidence that he suffered a permanent loss of a bodily function, and therefore finds that the county is entitled to summary judgment on the issue of non-economic damages. Under the Tort Claims Act, a plaintiff must present objective medical evidence of a permanent injury. Brooks v. Odom, 696 A.2d 619, 622-23 (N.J. 1997). Further, a plaintiff must present objective medical evidence that the alleged tort was the cause of the injury. Randall v. State, 649 A.2d 408, 410 (N.J. Super. Ct. App. Div. 1994). Here, the only permanent injury that Plaintiff has alleged is hearing loss. The only medical evidence Plaintiff has presented of this injury is the report of Dr. Park, which states that Plaintiff told Dr. Park that his ear injury occurred when he was slap boxing with a friend. Dr. Park's report does not indicate that Plaintiff's hearing loss is permanent and does not indicate that the March 11th incident was the cause of Plaintiff's hearing loss. Therefore, Plaintiff's evidence is insufficient to withstand Defendants' motion for summary judgment with regard to the assault and battery claim against the county.

**E. Failure to Train (Count Seven)**

Defendants interpret Plaintiff's failure to train claim as a state law claim, and again invoke the verbal threshold provision of the Tort Claims Act, arguing that the county is entitled to summary judgment with respect to non-economic damages. Plaintiff responds that he has

suffered injuries which would entitle him to non-economic damages, and that the Tort Claims Act does not apply to the extent his failure to train claim alleges a constitutional violation, rather than a violation of state law.

To the extent that Plaintiff's failure to train claim is based on state law, the verbal threshold provision bars Plaintiff from recovering non-economic damages from the county because, as explained above, Plaintiff has not presented objective medical evidence of a permanent injury caused by the March 11th incident.

To the extent that Plaintiff's failure to train claim is brought under § 1983, the verbal threshold provision of the Tort Claims Act does not apply.  See Greenway Dev. Co. v. Borough of Paramus, 750 A.2d 764, 770 (N.J. 2000) ("A public entity may not use a state statute, such as the [Tort Claims Act], to abrogate a claimant's constitutional rights.").  However, if in Count Seven Plaintiff is alleging that the county violated § 1983 by failing to train its employees, the Court finds that Defendant is entitled to summary judgment because, as with Count Three, Plaintiff has failed to show that the county was deliberately indifferent to the known or obvious constitutional violations that would result from its actions.

In sum, the Court grants Defendants' motion for summary judgment as to Count Seven to the extent Plaintiff is alleging that the county violated § 1983.  To the extent Plaintiff is alleging that the county violated state law, Defendants' motion for summary judgment as to non-economic damages is granted.

**IV.  CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is denied as to Count One of Plaintiff's complaint and granted as to Counts Two, Three and Four of Plaintiff's

complaint.  Further, Defendants' motion for summary judgment on the issue of non-economic damages  denied as to Count Five and granted as to Count Six.  Finally, Defendants' motion for summary judgment is granted as to Count Seven to the extent that it is a § 1983 claim and granted on the issue of non-economic damages to the extent that it is a state law claim.  An accompanying Order shall issue today.


Dated:  11-13-08                                        /s/ Robert B. Kugler           
                                                ROBERT B. KUGLER
                                                United States District Judge